```
UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
HALAL 4 U LLC,                                               :    Case No. 08-15216 (MG)
                                                             :
                      Debtor.                                :
                                                             :
-------------------------------------------------------------x
```

## MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO A CASE UNDER CHAPTER 7

*A P P E A R A N C E S:*

TRACY HOPE DAVIS
*United States Trustee for Region 2*
33 Whitehall Street, 21st Floor
New York, NY 10004
By:   Greg M. Zipes, Esq.

MURRAY S. RAFSKY
*Attorney for the Debtor*
150 Southfield Avenue
Suite 1238
Stamford, CT 06902
By:   Murray S. Rafsky, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**


      Currently before the Court is the United States Trustee's ("UST") motion to convert Halal 4 U LLC's case from a chapter 11 case to a case under chapter 7 or, alternatively, to dismiss the case. (ECF Doc. # 133.) Halal 4 U LLC (the "Debtor") submitted an untimely objection on September 21, 2010. The Court took the matter under submission without hearing oral argument. For the following reasons the Court grants the motion to convert the case to a case under chapter 7.

## BACKGROUND

The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 30, 2008. (ECF Doc. # 1.) On January 21, 2009, the UST moved the court to dismiss the case or convert it to a case under chapter 7 based on the Debtor's failure to retain counsel. The issue was resolved, however, when the Debtor obtained legal representation.

In the initial schedules, the Debtor claimed proprietary interests in two properties. (ECF Doc. # 1.) Several months later, on April 1, 2009, the Debtor filed amended schedules (the "Amended Schedules") listing interests in an additional eight properties. (ECF Doc. # 16.) While more comprehensive than the initial schedules, the Debtor's April 1, 2009 Amended Schedules were not entirely accurate and were once again amended on June 1, 2009 (the "Second Amended Schedules") to reflect the Debtor's interests in another two properties. (ECF Doc. # 24.) All of these properties are subject to mortgages issued to borrowers other than the Debtor. These borrowers generally were in default of mortgage payments, and the properties were generally subject to foreclosure proceedings when the Debtor allegedly acquired interests in the properties. The mortgagees or loan servicers for these properties have appeared by counsel in this case.

Despite numerous requests from the Court, the UST and creditor counsel, the Debtor has failed sufficiently to explain the nature of its interests in these properties and how such interests were acquired. Since filing a Rule 1007 Affidavit on March 25, 2009, in which the Debtor provided a cursory description of its business activities,[1] the Debtor has not supported its asserted rights in the properties listed on the Amended Schedules. (ECF Doc. # 10.) In its

---

[1] "The business of Halal 4 U LLC is the acquisition and economic redevelopment of distressed real estate. Product (real property) is acquired by the LLC through purchase, joint venture or partnerships and Halal 4 U assumes all of the costs of operation including mortgage payments. Acquired property is typically located in economically sub-standard areas, usually in a physical state of disrepair, with vacant units and marginal tenants who are in arrears on rentals." (Rule 1007-2 Affidavit, ECF Doc. # 10.)

2

motion, the UST characterizes the Debtor's purportedly owned properties as belonging to one of three categories: (1) those properties already surrendered or not subject to the automatic stay; (2) those properties the Debtor seeks to retain, and (3) those properties listed in the Second Amended Schedules that do not fit in the first or second category. (ECF Doc. # 133.) The properties in the third category are most problematic; the Debtor has not given any indication what it intends to do with these assets.

The Debtor has also failed to provide documentation of its bookkeeping, claiming that prior to filing this case, such a system was "unnecessary" due to the cash nature of the Debtor's operations. (ECF Doc. # 127.) While the Debtor has filed monthly operating reports from January 2001 through June 2010, such reports do not itemize the Debtor's income and expenses by property. The Court held a hearing on May 19, 2010 to give the parties an opportunity to present a reconciliation of the amounts owed and paid for each property. No reconciliation was offered, but the Debtor promised to either have a confirmable plan on file within 45 days or to submit to a dismissal of the case. The Debtor has not filed a confirmable plan (or any kind of plan for that matter).

## DISCUSSION

### A. Standard for Dismissal or Conversion Under Bankruptcy Code § 1112(b)

Under Bankruptcy Code § 1112(b), courts dismiss a chapter 11 case or convert it to a case under chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04. Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3

3

(Bankr. S.D.N.Y. 2009) (citing legislative history). Examples of cause to dismiss a chapter 11 case listed in the statute include:

> (1) "Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation"; 11 U.S.C. § 1112(b)(4)(A).
>
> (2) "Gross mismanagement of the estate"; 11 U.S.C. § 1112(b)(4)(B).

Courts have also dismissed chapter 11 petitions when they have not been filed in good faith. *See, e.g.*, *In re Loco Realty Corp.*, No. 09-11785 (ALG), 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June 25, 2009); *In re Canbec Inv. Corp.*, 349 B.R. 915, 918 (Bankr. M.D. Fla. 2006) ("A court may dismiss a Chapter 11 case if a petition for relief was filed without good faith."); 7 COLLIER ON BANKRUPTCY ¶ 1112.07 ("the court may also dismiss a chapter 11 case for lack of good faith"). Good faith "is required to prevent fraud or abuse of the bankruptcy process." *In re Loco Realty Corp.*, 2009 WL 2883050, at *2 (citing *In re Shar*, 253 B.R. 621, 629 (Bankr. D.N.J. 1999)). Courts consider multiple factors when determining whether a filing was made in bad faith, including whether "the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights" and the debtor's cash flow. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997). Chief Judge Gonzalez recently opined that "the critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy." *In re Loco Realty Corp.*, 2009 WL 2883050, at *3 (quoting *In re 68 W. 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002)) (internal quotation marks omitted).

The moving party has the burden of demonstrating cause for dismissal. *Id.* at *2. "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of

4

creditors and the estate." 7 COLLIER ON BANKRUPTCY ¶ 1112.05[1]. Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under § 1112(b). *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009); *In re Kholyavka*, No. 08-10653DWS, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)).

After a party establishes cause, a court must also examine whether dismissal or conversion of a case to a case under chapter 7 is in the best interests of the creditors and estate. *Id.* at ¶ 1112.04[6]. Courts look to multiple factors to determine which action is in the best interests of the creditors and the estate. Collier identifies ten such factors:

(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2) Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

5

        (10)    Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Id.* at ¶ 1112.04[7].  Once cause has been established, dismissal and conversion are not the only two options before the Court.  The Court also has the option of appointing a trustee or examiner.  11 U.S.C. § 1104(a)(3).  However, such action is considered an "extraordinary remedy" and has not been requested by the UST in this case.  *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007).

### B.  The Case Should Be Converted to a Case Under Chapter 7

The UST has moved to dismiss or convert this case on the ground that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation . . . ."  11 U.S.C. § 1112(b)(4)(A).  Specifically, the UST recommends the appointment of a chapter 7 trustee to investigate the Debtor's financial affairs and oversee the distribution of the Debtor's assets.  In support of the motion, the UST points to the estate's negative cash flow and inability to meet basic operating expenses.  The UST's motion does not explicitly accuse the Debtor of unclean hands.  It intimates, however, that the evasive and inconsistent nature of the Debtor's filings are cause for concern and have made it difficult for the UST to ascertain the nature and genesis of the Debtor's interests in the properties listed on the amended schedules.  The Debtor's principal, Halal Ahmed, maintains that he has no knowledge of the Debtor's financial affairs and that prior to filing for bankruptcy the company did not maintain a comprehensive bookkeeping system.

The UST's motion, in conjunction with other filings and hearings, supports a finding of cause as required by section 1112(b)(4).  There are two ways in which the Debtor has given the Court cause to convert or dismiss the case.  First, the UST contends that the Debtor's post-

petition actions have caused a "continuing loss to or diminution of the estate." 11 U.S.C. § 1112(b)(4)(A). In support of this claim, the UST points to the Debtor's post-petition negative cash flow and inability to meet basic operating expenses. The Debtor owes substantial post-petition mortgage payments and has not evidenced payment of taxes or insurance on the properties at issue. *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) ("One indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced. Another indicator is the debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay.") (internal quotation marks and citations omitted). The extent to which the Debtor's actions have caused a diminution in the estate's value is unclear due to the evasive and cursory description of the Debtor's interests in the properties. However, "[i]t is not necessary that the losses to the estate be large. All that need be found is that the estate is suffering some diminution in value." *Id.* (citing *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)).

Second, the Debtor's post-petition behavior supports a finding of "gross mismanagement." 11 U.S.C. § 1112(b)(4)(B). The Debtor owes a fiduciary duty to its creditors. *In re G-I Holdings, Inc.,* 385 F.3d 313, 319 (3d Cir. 2004). This duty encompasses a responsibility to keep the Court and other parties in interest apprised of the Debtor's business operations. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007) (citing *Petit v. New England Mortg. Servs., Inc.*, 182 B.R. 64, 69 (D. Me. 1995)). Despite repeated requests from the Court and the UST, the Debtor has failed to accurately represent its interests in the properties at issue and has failed to submit monthly operating reports that satisfactorily depict the Debtor's income and expenses by property. The Debtor's late-filed

objection does not adequately refute the UST's arguments in support of conversion. Rather, the Debtor's response reaffirms the Court's concerns.

At this juncture, it is more appropriate that the case be converted than dismissed. Collier articulates ten factors that are useful in determining whether the parties' interests are better served by dismissal or conversion. 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7]. Several of these factors support conversion, namely: whether there would be a loss of rights granted in the case if it were dismissed rather than converted; whether the debtor would simply file a further case upon dismissal; the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests. *Id.* Basically, the exact nature of the Debtor's assets remains unknown, and it makes sense to appoint a trustee to examine exactly what assets are available for creditor distribution.[2]

While there is no conclusive proof that the Debtor has filed its petition in bad faith, the circumstances surrounding the Debtor's filing and accompanying disclosures are suspicious. There are no records of the Debtor's cash inflows and outflows prior to the filing (and those post-filing are not very informative), the Debtor has filed two amended schedules listing additional properties not initially disclosed, and the Debtor has not satisfactorily demonstrated what interests it has in the listed properties and how it acquired such interests. Furthermore, it is unclear the extent to which the Debtor has satisfied its tax and insurance obligations on the listed properties, and the extent to which the Debtor has made the requisite mortgage payments. Additionally, one or more of the properties as to which the Debtor claims an interest were

---

[2] On multiple occasions since this case was filed, the Debtor's counsel has represented that he is holding funds in an escrow account for mortgage, tax and insurance payments. These funds are property of the estate under 11 U.S.C. § 541 and a chapter 7 trustee will undoubtedly seek an accounting of the deposits to and withdrawals from this account.

"acquired" or "transferred" from individuals facing imminent foreclosure or their own bankruptcy filings raising questions whether the Debtor's alleged interests were the result of fraudulent conveyances.

## CONCLUSION

Under all of the circumstances in this case, the Court concludes that this case should be converted to a case under chapter 7.

**IT IS SO ORDERED.**

DATED:      September 24, 2010
            New York, New York


                                                **/s/Martin Glenn**    
                                            MARTIN GLENN
                                            United States Bankruptcy Judge